# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:07CV504

| | |
|---|---|
| PROVIDENCE PRODUCTS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| IMPLUS FOOTCARE, LLC, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** comes before the Court on Defendant Implus Footcare's Motion for a Preliminary Injunction (Document #20). A hearing was held on this matter on January 23, 2008, before the Honorable Graham C. Mullen. For the reasons set forth below, this Motion is DENIED.

## BACKGROUND

This is a trademark infringement case between two companies that manufacture small, round deodorizers. Implus is the registered owner of the trademarked Sneaker Balls, which are air fresheners designed to combat odor in small places, such as lockers, gym bags, sneakers, and drawers. They come in a variety of colors, but all the balls have the same shape: two hollow plastic hemispheres, two rings that fit together around the circumference of the sphere, and an absorbent pad saturated in a liquid air freshening agent. The hemispheres are connected by the rings, which have interlocking teeth that are twisted open to allow the air freshener to flow out.

1

(Court's Exhibit 1)   The trademark licensed to Implus covers their design of a sphere with a band around the circumference.

Providence's Refresh-R-Rounds are also spheres and similarly marketed for use in small areas such as gym bags, sneakers, and lockers.  Refresh-R Rounds are composed of two plastic hemispheres surrounding an absorbent pad.  The hemispheres connect with interlocking teeth, which are cut out of each hemisphere.  (Court's Exhibit 2).

When Implus discovered the Refresh-R-Rounds being sold in a Rack Room Shoes, they sent a cease-and-desist letter to Providence requesting that the company recall and destroy all Refresh-R-Rounds products and agree not to "engage in similar conduct in the future." Providence responded by filing a complaint asking for a declaratory judgment against Implus, and Implus filed a counterclaim asking for a preliminary and permanent injunction against Providence.

**DISCUSSION**

The standard for issuance of preliminary injunctive relief is the "balance of hardships" test stated in *Blackwelder Furniture Co. of Statesville, Inc. v. SeiligMfg. Co.,* 550 F.2d 189 (4th Cir. 1977); *see also Rum Creek Coal Sales, Inc. v. Cuperton,* 926 F.2d 353 (4th Cir. 1991); *Telvest, Inc. v. Bradshaw,* 618 F.2d 1029 (4th Cir. 1980).

Before preliminary injunctive relief is granted, the Court must consider four  factors:

1. the likelihood of irreparable harm to the movant without the temporary injunction;
2. the likelihood of harm to the non-movant with the injunction;
3. the movant' s likelihood of success on the merits; and
4. the public interest.

In evaluating the claims, this Court will examine the first two factors together.

### 1. THE LIKELIHOOD OF IRREPARABLE HARM TO THE MOVING PARTY and
### 2. THE LIKELIHOOD OF HARM TO THE NON-MOVING PARTY

If, after balancing the first two factors, the balance "tips decidedly" in favor of the movant, a preliminary injunction will be granted if "the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Blackwelder,* 550 F.2d at 195. In other words, if the harm to the movant greatly outweighs the harm to the non-movant, then enough of a showing has been made to permit the issuance of an injunction. But, as the harm to the movant decreases, when balanced against the harm to the defendant, the likelihood of success on the merits becomes more important. *Telvest,* 618 F.2d at 1032-33. Likelihood of success on the merits alone, however, without any showing of a risk of irreparable harm, is not sufficient to warrant the issuance of a preliminary injunction since a movant must always show some risk of probable irreparable injury. *Blackwelder,* 550 F.2d at 196. Therefore, as the balance of the first two factors tips away from the movant, a stronger showing on the merits is required. *Telvest,* 618 F.2d at 1029.

In this case, the potential harm to each party is, at best, equal. The Court cannot apply the presumption of irreparable harm in this case because Implus has not shown why such a drastic, immediate measure of a preliminary injunction is necessary. Without such a showing, it would be imprudent to grant Implus a victory without the safeguards and examinations of discovery.

### 3. THE MOVING PARTY'S LIKELIHOOD OF SUCCESS ON THE MERITS

Because the analysis of the harms to each party proved to be equal, Implus must make a clear showing of their probability to succeed on the merits. *Direx Israel Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991).

To prevail on its Lanham Act claim, Implus must demonstrate (1) that it has a valid, protectable trademark, and (2) that Providence's use of a similar trademark is likely to cause confusion among consumers. *Giant Brands, Inc. V. Giant Eagle, Inc.*, 228 F.Supp.2d 646 (D.MD.2002) (*citing Lone Star Steakhouse & Saloon, Inc. V. Alpha of Virginia, Inc.,* 43 F.3d 922, 930 (4th Cir 1995). The owner of a federally-registered trademark is entitled to a presumption that the mark is valid and enforceable. *Lone Star Steakhouse*, 43 F.3d at 930. In addition, the validity of a mark is heightened when it has been in continuous use for a number of years. *Id.* Incontestability is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the mark in commerce." *Id. citing* 15 U.S.C. § 1115(b).

Implus clearly fulfills the standard of continuous use but the question of likelihood to cause confusion is more complicated. As explained above, Sneaker Balls are made up of two plastic hemispheres, two interlocking rings, and an absorbent ball. (Court's Exhibit 1) Refresh-R Rounds are composed of two plastic hemisphere with attached teeth and an absorbent pad. (Court's Exhibit 2). The trademark description for Sneaker Balls, and indeed, the party's own admission, includes the language of a sphere surrounded by a ring. Refresh-R Rounds' design does not include a ring. Without the ring, and without the benefit of a full examination of the merits of the parties' arguments, the design of Refresh-R Rounds does not appear to infringe on the Sneaker Balls trademark.

In addition, even if after full discovery, Refresh-R Rounds design was found to have a de facto ring, it is not clear that Providence would be liable for infringement. Even incontestable marks, can be challenged on grounds including functionality. Providence asserts that the design mark for Sneaker Balls was never entitled to registration in the first place, and should be canceled now, eighteen years later, because "upon information and belief," the Design Mark, "taken as a whole, is functional." Complaint,

4

¶ 34.

"A product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32-33, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001), *citing Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995) (explaining that "[t]he functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature").

In determining whether a design trademark is functional, courts consider four factors:

1) the existence of a utility patent disclosing the utilitarian advantages of the design;
2) advertising materials in which the originator of the design touts the design's utilitarian advantages;
3) the availability to competitors of functionally equivalent designs; and
4) facts indicating that the design results in a comparatively simple or cheap method of manufacturing the product.

*Valu Engineering, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1274 (Fed. Cir. 2002).

This analysis into the functionality of Sneaker Rounds' trademark is certainly appropriate for this case. However, it would be premature of the Court to determine the functionality of the Sneaker Balls design without discovery and testimony from experts in this area. In addition, a conclusion of the functionality of the design is not necessary for a determination of the propriety of a preliminary injunction, and therefore, the Court will not analyze functionality or the validity of Sneaker Rounds' trademark at this time.

### 4. THE PUBLIC INTEREST

As to the question of public interest, protection of federally protected property interests in

trademarks against infringement is clearly in the public interest. This sentiment is reflected in the express provision for injunctive relief in the Lanham Act. *See* 15 U.S.C. § 1116. However, it is also in the public's interest for cases to be litigated fully and appropriately. Given the fact that it is too early to determine either party's likelihood of success on the merits, it would not be in the public's interest for the Court to grant such a drastic remedy as a preliminary injunction. Here, the public's interest is most effectively served by allowing the parties to conduct discovery before granting any relief.

For the foregoing reasons, IT IS ORDERED that Defendant's Motion for a Preliminary Injunction is DENIED.

IT IS FURTHER ORDERED that Providence Products is required to maintain accurate sales records of Refresh-R Rounds including dates of sale, identification of retail customers, and amount of proceeds.

Signed: January 25, 2008

Graham C. Mullen
United States District Judge